UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DAVID ENGLAND,

    Plaintiff,

v.

MARSHALL COUNTY SHERIFF and
QUALITY CORRECTIONAL CARE, LLC,

    Defendants.

CAUSE NO. 3:21-CV-92 DRL-MGG

## OPINION & ORDER

The Marshall County Sheriff moved to dismiss all claims brought by David England, a former inmate at the Marshall County Jail, resulting from medical treatment during his four-month detention. The court previously dismissed this case without prejudice, and Mr. England amended his complaint. The second amended complaint added Quality Correctional Care (QCC) as a defendant. The sheriff again moved to dismiss all claims, and QCC asked to join the motion as to the only constitutional claim against it. The court grants the joint motion.

## BACKGROUND

The court looks to the second amended complaint to assess the motion to dismiss, taking all well-pleaded facts as true. From December 13, 2018 to April 4, 2019, Mr. England was detained at the Marshall County Jail [ECF 21 ¶¶ 4-5]. He immediately informed staff of various cardiac conditions, medical appointments, and medications [*id.* ¶¶ 9-10]. His son made multiple attempts to deliver his medical records to ensure adequate care, but he says they were refused [*id.* ¶ 11].

During his incarceration, his medication ran out and was not refilled for approximately six weeks, leading to various fainting spells and falls [*id.* ¶¶ 15-17]. QCC and jail staff mocked Mr. England's medical problems [*id.* ¶ 22]. While incarcerated, he made repeated oral and written requests for appropriate treatment, all of which were filed according to protocol and subsequently denied or

ignored [*id.* ¶ 23]. Mr. England was eventually transferred to the hospital for chest pain and an arrythmia and was stabilized [*id.* ¶¶ 24-26]. Shortly after he was stabilized, Mr. England pleaded guilty to the underlying offense and was sentenced and released on April 4, 2019 [*id.* ¶¶ 28-29].

The second amended complaint alleges that the sheriff and QCC failed to provide Mr. England with proper medical treatment [*id.* ¶ 35]. Additionally, Mr. England alleges the sheriff (in his official and individual capacity) and QCC failed to provide adequate medical care during his incarceration in violation of the Eighth Amendment and Fourteenth Amendment [*id.* ¶ 42]. Mr. England also alleges a state law negligence claim against the sheriff [*id.* ¶ 36]. The joint motion to dismiss addresses the pleading sufficiency of these claims.

## STANDARD

In reviewing a motion to dismiss, the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement must contain enough factual matter, accepted as true, to state a plausible claim, not a speculative one. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim must be plausible, not probable. *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Whether a claim is sufficiently plausible to survive a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

DISCUSSION

    A.  *Mr. England Fails to State a Claim against the Marshall County Sheriff in his Official Capacity.*

Mr. England claims that MCS (the sheriff, in his official capacity) violated his constitutional rights by failing to provide adequate medical care. The sheriff moves to dismiss this claim, arguing Mr. England's complaint didn't allege any policy, practice, or custom that violated his rights.

Claims against the sheriff in his official capacity are treated as claims against the county, which "cannot be held liable for the unconstitutional acts of [its] employees unless those acts were carried out pursuant to an official custom or policy." *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008) (citations omitted). Mr. England may sue under 42 U.S.C. § 1983 for a constitutional violation caused by the county's policy, practice, or custom. *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978). He must establish that (1) he suffered a deprivation of a federal right (2) as a result of an express policy, a widespread custom, or a deliberate act of a decisionmaker with final policymaking authority for the county that (3) was the proximate cause of his injury. *King v. Kramer*, 763 F.3d 635, 649 (7th Cir. 2014); *see also Grieveson*, 538 F.3d at 771.

"The official policy requirement for liability under § 1983 is to distinguish acts of the [county] from acts of employees of the [county], and thereby make clear that [county] liability is limited to action for which the [county] is actually responsible." *Grieveson*, 538 F.3d at 771 (citations, internal quotation marks, and emphasis omitted). There is no heightened pleading standard. *White v. City of Chicago*, 829 F.3d 837, 843-44 (7th Cir. 2016). The plausibility standard set forth in *Twombly* and *Iqbal* applies. *Gill v. City of Milwaukee*, 850 F.3d 335, 339, 344 (7th Cir. 2017).

Mr. England does not allege in the second amended complaint that the purported constitutional violations were the result of an express policy or an act of an authority-wielding policymaker, or articulate facts that would give rise to such a fair inference. *See Grieveson*, 538 F.3d at 771. The operative complaint lacks the factual basis to tie these actions, committed by individuals, to

3

the county through these avenues. *See Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007) (quoting *Fairley v. Fermaint*, 482 F.3d 897, 904 (7th Cir. 2007) ("Misbehaving employees are responsible for their own conduct[;] units of local government are responsible only for their policies rather than misconduct by their workers.")).

Mr. England says the hook to attribute these actions to the county is its alleged failure to train or supervise QCC staff—the custom of not implementing a policy. To sustain such a claim, Mr. England must establish that MCS had actual knowledge of Mr. England's serious health needs and nonetheless deliberately disregarded his suffering such that this indifference constituted a widespread custom or policy. *See Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021) ("[i]naction, too, can give rise to liability in some instances if it reflects a conscious decision not to take action") (quotation omitted); *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 381 (7th Cir. 2017) ("failure to make policy itself may be actionable") (citation omitted); *see also City of Canton, Ohio v. Harris,* 489 U.S. 378, 388 (1989) ("a city can be liable under § 1983 for inadequate training of its employees").

Here, the second amended complaint cursorily alleges that "QCC and MCS were acutely aware of [Mr. England's] medical condition" [ECF 21 ¶ 21] and then jumps to the conclusion that MCS failed to train or supervise its staff adequately [*id.* ¶ 41]. There are no facts pleaded to assume reasonably a *de facto* policy or custom to be deliberately indifferent to the medical needs of its inmates (for example, deciding to not train employees). "To succeed on this *de facto* custom theory, the plaintiff must demonstrate that the practice is widespread and that the specific violations complained of were not isolated incidents." *Gill*, 850 F.3d at 344. "At the pleading stage . . . a plaintiff pursuing this theory must allege facts that permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom." *Id.* This pleading doesn't.

The second amended complaint pleads indecorous conduct by QCC and MCS staff against Mr. England alone. Though he says some of this conduct was repeated over the course of his

4

detention, it remains conduct specific to one individual and changes in character from mocking him, to not filling his medication, and to refusing to accept medical records [ECF 21 ¶¶ 11, 15, 20, 22]. Apart from his experience, the complaint provides no reasonable indication that this conduct was so widespread or systemic as to become a practice or custom. *See Thomas v. Cook Cnty. Sheriff's Dep't,* 604 F.3d 293, 303 (7th Cir. 2009) ("must be more than one instance, or even three [instances]" of unconstitutional activity for *Monell* liability) (internal citations omitted); *see also Gill*, 850 F.3d at 344 (isolated incidents do not demonstrate a *de facto* custom or practice); *Chatham v. Davis*, 839 F.3d 679, 685 (7th Cir. 2016) ("*Monell* claims based on allegations of an unconstitutional municipal practice or custom … normally require evidence that the identified practice or custom caused multiple injuries."); *Grieveson,* 538 F.3d at 774 ("evidence of four incidents that he alone experienced fails to meet the test of a widespread unconstitutional practice by the Jail's staff that is so well settled that it constitutes a custom or usage with the force of law") (quotation and citation omitted).

As pleaded, Mr. England omits any plausible factual basis permitting a reasonable inference that a *de facto* policy or widespread custom to forego training employees to address an inmate's medical needs existed. Instead, the allegation supporting any such theory is conclusory—that MCS failed to train or supervise those in his employ amounting to deliberate indifference—but this will not do. *See Iqbal*, 556 U.S. at 678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Mr. England has failed to state a claim against the sheriff in his official capacity, so the court must dismiss this claim.

  B. *Mr. England Fails to State a Claim against the Marshall County Sheriff in his Individual Capacity.*

Mr. England also claims that the sheriff, in his personal capacity, violated this detainee's constitutional rights by failing to provide adequate medical care. The sheriff moved to dismiss this claim, arguing that Mr. England's complaint fails to allege that the sheriff, as an individual, caused or participated in a constitutional violation. In response, Mr. England relies on extrajurisdictional

5

authority and an affidavit from Mr. England's son to assert that the sheriff had knowledge of his medical condition and the inadequacy of his care. The sheriff urges the court to disregard this affidavit as an impermissible attempt to amend the complaint.

To state a claim, a party must provide "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the [] claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (citation and quotations omitted); *see also* Fed. R. Civ. P. 8(a)(2). This requires more than just labels or conclusions or a formulaic recitation of the elements. *Twombly*, 550 U.S. at 555. However, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563 (describing the proper pleading standard). Indeed, "the party defending the adequacy of a complaint may point to facts in a brief or affidavit [] to show that there is a state of facts within the scope of the complaint that if proved (a matter for trial) would entitle him to judgment." *United States ex rel. Hanna v. City of Chicago*, 834 F.3d 775, 779 (7th Cir. 2016); *see also Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) ("a party opposing a Rule 12(b)(6) motion may submit materials outside the pleadings to illustrate the facts the party expects to be able to prove"). But supplemental information provided through an affidavit attached to a motion to dismiss cannot overcome an omission in the pleading, for a claim must be stated before additional facts within its scope can be adduced. *See Twombly*, 550 U.S. at 563; *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012) ("[i]t is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss, nor can it be amended by the briefs on appeal") (citation omitted).

Because Mr. England was a pretrial detainee, his claims must be analyzed under the Fourteenth Amendment. *Miranda v. Cty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018). "Pre-trial detainees cannot enjoy the full range of freedoms of unincarcerated persons," *Tucker v. Randall*, 948 F.2d 388, 391 (7th Cir. 1991) (citation omitted), but they are entitled to constitutionally adequate medical care, *see Miranda*,

6

900 F.3d at 353-54. To state a claim for the denial of medical care, a detainee must establish that the defendant acted "with purposeful, knowing, or reckless disregard of the consequences" related to the provision of medical care, and that the medical care received, or the denial of medical care, was "objectively unreasonable." *Id.* at 352, 354. In determining whether a challenged action is objectively unreasonable, the court must consider the "totality of facts and circumstances." *Mays v. Dart*, 974 F.3d 810, 819 (7th Cir. 2020). Negligent conduct doesn't offend the due process clause, so allegations of negligence—even gross negligence—won't suffice. *Miranda*, 900 F.3d at 353.

At its base, § 1983 "creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional violation." *Hildebrant v. Ill. Dep't of Nat. Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003) (quoting *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996)). This means the sheriff "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he] might see." *Gill*, 850 F.3d at 344. This standard requires more than knowing of a medical condition; instead, the sheriff must "have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012).

Mr. England's second amended complaint alleges that he told jail staff, including the nurse, commander, and correctional officers, that he suffered from a serious heart condition [ECF 21 ¶ 9]. He alleges the conclusions that the sheriff was "acutely aware of his medical condition" and did not provide adequate care [*id.* ¶ 21], and that the sheriff personally knew the quality of care he was receiving [*id.* ¶ 42], but he offers no facts that make these conclusions plausible. The operative pleading perhaps establishes the knowledge and involvement of other employees, but not the sheriff.

Mr. England tries to remedy this omission through an affidavit, noting that his son left a voice message with the sheriff about his father's medical care and told him that his father was not receiving adequate care from the attendant medical staff [ECF 29-1 ¶¶ 16-17]. Mr. England's son received a

response message from the sheriff, indicating that all medical treatment was being provided through QCC and informing him how to contact the providers [*id.* ¶¶ 18-19]. The court isn't inclined to consider this affidavit when the operative pleading falls short of a plausible claim. *See Twombly*, 550 U.S. at 563 (requiring a plausible pleading); *Agnew*, 683 F.3d at 348 (cannot amend a complaint through briefing). That said, even were the court to consider this information, what little the affidavit offers tends to show that the sheriff promptly addressed the inquiry rather than turned a blind eye to it. Mr. England has not stated a personal capacity claim against the sheriff, not on this pleading.

C. *Mr. England Fails to State a Claim against QCC.*

QCC asked to join MCS's motion to dismiss Mr. England's complaint as to the constitutional claim brought against it [ECF 32]. QCC argues that instead of filing a nearly identical motion, using the same analysis and authority to justify its argument, it should be permitted to join MCS's motion for the sake of judicial efficiency. QCC provides no indication of whether it conferred with the other parties, if another party objects, or the reasons for waiting until briefing ended before filing this motion to join.[1] No one has objected since the motion.

The relevant claim against QCC depends on allegations of a common corporate procedure, policy, or custom, *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653-54 (7th Cir. 2021), not merely the existence of a county policy or custom as argued by MCS, *id.* at 653. But to QCC's point, the analysis is in many ways similar. *See id.*

Mr. England's second amended complaint does not allege a common corporate policy or plan of providing inadequate medical care. Looking to a widespread custom, this pleading provides no reasonable indication that this conduct was so widespread or systemic as to become a corporate policy, *see Gill*, 850 F.3d at 344; *Chatham*, 839 F.3d at 685; *Thomas*, 604 F.3d at 303, or likewise rises above the

---

[1] QCC didn't enter its appearance until the day that Mr. England's response was due [ECF 27].

threshold of random incidents to constitute a widespread policy, *see Grieveson,* 538 F.3d at 774. Absent factual allegations supporting this claim, QCC's joint motion to dismiss must also be granted.

    D.  *The Court Declines Supplemental Jurisdiction over the State Negligence Claims.*

Mr. England brings a state law negligence claim against MCS. MCS asserts dismissal is appropriate under Rule 12(b)(6), or alternatively summary judgment under Rule 56, because it is shielded as a matter of law from the negligent acts of an independent contractor pursuant to the Indiana Tort Claims Act. Mr. England responds that the true relationship between QCC and MCS is a question of fact to be left for trial.

The basis of the court's jurisdiction in this matter is federal question, with supplemental jurisdiction over the state law claim. As the court has concluded the second amended complaint fails to state a claim that QCC, MCS, or the sheriff in his personal capacity violated Mr. England's constitutional rights, the court is left only with supplemental jurisdiction. When faced with only supplemental jurisdiction, the court considers various factors, such as judicial economy, convenience, and fairness and comity, when deciding whether to retain jurisdiction. *See Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994). In weighing these factors here, nothing compels the court to retain jurisdiction, particularly at this early stage. Accordingly, the court declines to exercise supplemental jurisdiction over this remaining claim.

## CONCLUSION

Accordingly, the court GRANTS MCS's motion to dismiss [ECF 25], DISMISSES Mr. England's federal claims against MCS, GRANTS QCC's request to join the motion [ECF 32], DISMISSES Mr. England's federal claim against QCC, and DISMISSES Mr. England's state law claim under 28 U.S.C. § 1367(c)(3). This dismissal is WITHOUT PREJUDICE.

SO ORDERED.

June 22, 2022                                                        *s/ Damon R. Leichty*
                                                                                   Judge, United States District Court